vaught 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-279-CV





LELAND R. ENOCHS, GUARDIAN AD LITEM FOR


JUSTIN CASEY VAUGHT; AND FRANK VAUGHT,



 APPELLANTS


vs.





KIMETHA CHIESA BROWN, INDIVIDUALLY,


AND AS NEXT FRIEND OF JUSTIN CASEY VAUGHT,



 APPELLEE



 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT



NO. 92-014-C368, HONORABLE BURT CARNES, JUDGE PRESIDING



 




 Appellee Kimetha Chiesa Brown, individually and as next friend, filed a negligence
suit against Jennie Davies for injuries suffered by her minor son, Justin Vaught, in an automobile-bicycle accident. Brown employed Jerry Galow of Whitehurst, Harkness & Watson (Whitehurst)
to bring these claims. Frank Vaught, Justin's father, intervened in the action, and the court
appointed a guardian ad litem, Leland Enochs, for Justin. The parties entered into a settlement
agreement with Davies and her insurance carriers, but asked the trial court to apportion the
settlement proceeds. Enochs and Vaught appeal the trial court's apportionment of the settlement
proceeds and the award of attorney's fees to Whitehurst. We will affirm.



 BACKGROUND


 Justin's parents, Kimetha Brown and Frank Vaught, were divorced in 1983. Justin
lived with Brown, who had been appointed his sole managing conservator. In July 1991, while
riding his bicycle in Georgetown, Justin Vaught was hit by a car and suffered serious injuries,
including permanent brain damage.

 Brown and her husband, Chris Brown, signed a contingent fee agreement and
employed Whitehurst to bring suit against Jennie Davies, the driver of the car. In January 1992,
Whitehurst filed suit against Davies, representing Brown individually and as Justin's next friend.

 Whitehurst rendered legal services resulting in the tender of $2,325,000 by various
insurance companies. (1) Davies' primary insurance carrier, Prudential Property and Casualty
Insurance Company, tendered its policy limits of $300,000 after suit was filed in January 1992. 
In May 1992, after initially refusing to tender and characterizing this as a defensible case, Davies'
excess carrier agreed to tender the limits of its umbrella policy in the amount of $2,000,000 in
exchange for a release agreement. (2)

 The following November, Justin's natural father, Frank Vaught, filed an
intervenor's original petition both individually and as Justin's next friend, seeking damages for
Justin's harm and his own. Both Vaught and the defendant asked the court to appoint a guardian
ad litem for Justin. The court appointed Leland Enochs as guardian ad litem on November 19,
1992.

 In December, Davies filed a motion to enter into a confidential release and
settlement agreement. In January 1993, the trial court signed an interlocutory take-nothing
judgment against Brown, Enochs, and Vaught for any claims against Davies. On Brown's motion
for judgment, the trial court heard evidence and apportioned the settlement proceeds. In its final
judgment, the trial court awarded Brown $100,000 for past medical expenses, $50,000 for loss
of companionship with Justin, and $211,577.72 for repayment of a contractual lien retained by
Prudential for medical bills. The trial court awarded Vaught $15,000 for his loss of
companionship with Justin, and awarded Enochs $15,000 for his services as guardian ad litem. 
It then awarded Justin the remainder of the proceeds, approximately $1.9 million, plus accrued
interest, and ordered attorney's fees to Whitehurst of "a one-third fee on all money received on
behalf of Justin Casey Vaught for its representation of Justin Casey Vaught."

 Upon request, the trial court filed findings of facts and conclusions of law. Justin's
guardian ad litem and his father appeal the trial court's judgment, challenging the division of the
settlement funds and the award of attorney's fees to Whitehurst out of Justin's recovery. We will
group Enochs' and Vaught's points of error into three categories: (1) the trial court's award of
attorney's fees to Whitehurst based on the contingent fee contract; (2) the trial court's award of
attorney's fees to Whitehurst based on the alternate ground of quantum meruit; and (3) the trial
court's apportionment of settlement proceeds to Vaught and Brown for loss of companionship.



 DISCUSSION


The Contingent Fee Contract 


 The trial court found that a valid contingent fee agreement existed between Brown,
Justin's next friend and managing conservator, and Whitehurst for the firm to represent Justin in
exchange for a fee of one-third of Justin's recovery. Both Enochs and Vaught challenge this
finding and argue that the contingent fee contract was void under section 82.065 of the
Government Code. Tex. Gov't Code Ann. § 82.065(a) (West Supp. 1994) ("Government Code").

 Vaught additionally argues that the contract is voidable, contending that adverse
interests existed between Brown and Justin when the contract was executed and that a guardian
ad litem should have been appointed at that time. The trial court found that Vaught had no
standing to challenge the contract and therefore did not address Vaught's grounds for invalidating
the contract. Vaught challenges this conclusion as well.

 While Vaught may challenge the trial court's discretion in its apportionment of the
settlement proceeds, he has no standing to challenge the validity or interpretation of the fee
contract between Justin and Whitehurst. Brown was, and is, the sole managing conservator. The
Family Code delegates to the sole managing conservator the exclusive right to represent a child
in a legal action and to make substantial legal decisions. See Act of June 20, 1987, 70th Leg.,
R.S., ch. 744, § 5, 1987 Tex. Gen. Laws 2666, 2667 (Tex. Fam. Code § 14.02(a), since
amended); Tex. Fam. Code Ann. § 12.04(7) (West Supp. 1994); (3) Urbish v. 127th Judicial Dist.
Court, 708 S.W.2d 429, 431 (Tex. 1986). (4)

 Vaught did have the right to request that a guardian ad litem be appointed. See
Tex. R. Civ. P. 173. He exercised that right ten months after suit had been filed and after
Whitehurst had secured $2,325,000 in insurance proceeds for Justin. The court granted Vaught's
motion to appoint a guardian ad litem. Enochs, as the guardian ad litem, rather than Vaught, had
standing to challenge the validity of the fee contract on Justin's behalf. We therefore overrule
Vaught's first, second, and third points of error.

 In a related point, Enochs challenges the trial court's conclusion of law that by
accepting the services of Whitehurst, Justin Vaught, by and through his guardian ad litem, is
estopped from claiming that Whitehurst is not entitled to a fee. The trial court made findings of
fact that Whitehurst provided valuable legal services to Justin by successfully handling his
personal injury claim, and that Justin accepted, used, and enjoyed these services and the product
of these services. These findings support the theory of quasi-estoppel. The principle of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a
position he has previously taken. Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd., 817 S.W.2d
160, 164 (Tex. App.--Houston [14th Dist.] 1991, no writ) (citation omitted). The doctrine applies
when it would be unconscionable to allow a person to maintain a position inconsistent with one
in which he accepted a benefit. Id. Misrepresentation by one party, and reliance by the other,
are not necessary elements of quasi-estoppel. Vessels v. Anschutz, 823 S.W.2d 762, 765 (Tex.
App.--Texarkana 1992, writ denied). In this case, it is unconscionable for Enochs, on Justin's
behalf, to challenge the validity of the contingent fee contract when Justin has accepted the
benefits of Whitehurst's services. See Estate of Grimes v. Dorchester Gas Producing Co., 707
S.W.2d 196, 205 (Tex. App.--Amarillo 1986, writ ref'd n.r.e.) (having accepted royalties under
instrument, appellants are estopped from denying the validity of the "consolidation area" in that
instrument); Baron v. Mullinax, Wells, Mauzy & Baab, Inc., 623 S.W.2d 457, 462 (Tex.
App.--Texarkana 1981, writ ref'd n.r.e.) (appellant cannot claim contingent fee contract invalid
for pending case while treating it as valid and receiving substantial benefits under it for other
purposes). We overrule Enochs' fifth point of error.

 Even if Enochs were not estopped from challenging the validity of the contingent
fee contract, we would not hold the contract void under Government Code section 82.065(a). 
Section 82.065(a) requires that a contingent fee contract be in writing and signed by the attorney
and client. Government Code § 82.065(a). While Brown, the client, signed the written fee
contract, Galow, the attorney responsible for the case, failed to sign the agreement. However,
the trial court concluded as a matter of law that the failure of the attorney to sign the contract "did
not render it void or voidable, in light of the circumstances surrounding its execution." Were he
not estopped, Enochs would challenge this conclusion of law.

 We must construe section 82.065 and determine whether the legislature intended
to make void or voidable a written attorney-fee contract signed by the client and fully performed
by the attorney, but lacking the attorney's signature. To determine the legislative intent, we look
to the language used and the purpose behind regulation of contingent fee contracts. Wilburn v.
State, 824 S.W.2d 755, 760 (Tex. App.--Austin 1992, no writ) (citation omitted). Section 82.065
provides:



(a) A contingent fee contract for legal services must be in writing and signed by
the attorney and client.


(b) A contingent fee contract for legal services is voidable by the client if it is
procured as a result of conduct violating the laws of this state or the
Disciplinary Rules of the State Bar of Texas regarding barratry by attorneys
or other persons.



While the legislature afforded clients the express remedy of voiding a contingent fee contract that
violates barratry rules, it did not dictate the legal effect of a contingent fee contract fully
performed but not signed by the attorney. We therefore look to the purpose behind section
82.065.

 We must look to the entire act to effectively determine the purpose behind a specific
provision. Wilburn, 824 S.W.2d at 760. The legislature addressed contingent fee contracts in
the act that amended the barratry statute. See Act of June 14, 1989, 71st Leg., R.S., ch. 866,
§ 2, 1989 Tex. Gen. Laws 3855, 3856 (Tex. Penal Code § 38.12, since amended). The purpose
of the barratry statute is to protect vulnerable and unknowing individuals from overreaching or
improper behavior on the part of lawyers. Lopez v. State, 846 S.W.2d 90, 95 (Tex. App.--Corpus
Christi 1992, pet. ref'd). The requirement in section 82.065(a) of having a signed, written
contingent fee contract furthers this purpose. If a contingent fee contract must be written and
signed, the client has a better opportunity to fully comprehend that the fee arrangement is a
contingent one.

 However, we do not believe that clients are afforded any protection by voiding a
written contract that has been signed by the client, and fully performed by the attorney to the
benefit of the client, simply because the attorney did not sign contract. Here, no one is claiming
that Brown, who entered into the contract on Justin's behalf, did not understand or agree to the
contingent fee arrangement that Whitehurst attempts to enforce. We presume that the legislature
intended a just and reasonable result in enacting a statute. Tex. Gov't Code Ann. § 311.021(3)
(West 1988). Moreover, we may consider the consequences of a particular construction. Tex.
Gov't Code Ann. § 311.023(5)(West 1988). In this case, to consider the contingent fee contract
void would lead to an unreasonable and unjust result and would not serve the purpose of
protecting vulnerable clients. Brown knowingly signed the written contract and continues to
consent to its enforceability; Whitehurst performed the legal services and procured the settlement
funds; and Justin accepted the benefits. To void the contract under these circumstances simply
because the attorney failed to sign the contract would unjustly enrich Justin.

 Section 82.065(a) can be sensibly construed to operate in a manner similar to the
statute of frauds. Under the statute of frauds, an agreement is enforceable if it is in writing and
signed by the party to be charged. Tex. Bus. & Com. Code Ann. § 26.01 (West 1987). A
contract is not void if these requirements are not met; rather, the statute renders the contract
voidable at the option of the party against whom the contract is to be enforced. See Mason v.
Abel, 215 S.W.2d 377, 381-82 (Tex. Civ. App.--Dallas 1948, writ ref'd n.r.e.). Other statutes
requiring written agreements operate similarly. See Tex. Prop. Code Ann. § 5.021 (West 1984)
(instrument of conveyance must be in writing and must be subscribed and delivered); Tex. Rev.
Civ. Stat. Ann. art. 6573a § 20(b) (West Supp. 1994) (action for real estate broker's commission
requires signed writing by the party to be charged). Both the statute of frauds and the statute of
conveyances are designed to prevent fraud. Johnson v. Black, 197 S.W.2d 523, 530 (Tex. Civ.
App.--Eastland 1946, writ ref'd n.r.e.). Under these circumstances, we believe that section 82.065
accomplishes its purpose of guarding against fraud in contingent fee contracts by requiring the
party enforcing the contract to produce a written contract signed by the party to be charged.

 We are convinced that the purpose of section 82.065(a) has been fulfilled in this
case. Brown's signature on the written contract demonstrates her awareness of the contingent fee
arrangement. Brown, the client and appellee, asks that the contract be enforced.

 Finally, even if the legislature intended to make unenforceable a contract not signed
by both the attorney and client, Whitehurst fully performed the legal services under the agreement
and Justin accepted the benefits through his guardian ad litem. If a contract is executed by one
party and nothing remains but the payment of consideration, consideration may be recovered
notwithstanding the statute of frauds. Machann v. Machann, 269 S.W.2d 826, 828 (Tex. Civ.
App.--Waco 1954, writ ref'd n.r.e.). When one party fully performs a contract, the statute of
frauds is unavailable to the other who knowingly accepts the benefits and partly performs. Estate
of Kaiser v. Gifford, 692 S.W.2d 525, 526 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.)
(oral installment agreement, payable in 300 monthly installments not barred by statute of frauds
because deceased lender made full performance). We believe this reasoning equally applies to
Government Code section 82.065(a). Whitehurst's full performance and Justin's acceptance of
the benefits prevent Enochs from arguing that the contract is unenforceable under section 82.065. 
We overrule Enochs' first point of error.

 Enochs next argues that the trial court erred by determining that the contract was
ambiguous, by admitting parol evidence to interpret the agreement, and by concluding that the
contract covered Justin's claims. Whether a contract is ambiguous is a question of law for the
court to decide by looking at the agreement as a whole in light of the circumstances existing at the
time of its execution. Reilly v. Rangers Management. Inc., 727 S.W.2d 527, 529 (Tex. 1987). 
If the instrument is ambiguous, the court may admit extraneous evidence to determine its true
meaning. Connelly v. Paul, 731 S.W.2d 657, 660 (Tex. App.--Houston [1st Dist.] 1987, writ
ref'd n.r.e.). The first two sentences of the contract provide:



 I hereby employ WHITEHURST, HARKNESS & WATSON, Attorneys,
to represent me as my attorneys in connection with all claims I may have against
Mrs. Davies & any U.M. carrier as a result of personal injuries sustained by me
[struck] Justin Vaught [inserted] on or about the 3rd day of July, 1991.


 I understand and agree that I do not owe any fee unless a recovery is made
on my behalf, in which event I agree to pay Whitehurst, Harkness & Watson their
fee, and hereby assign to them a one-third (33 1/3%) interest in and to my claim
if completed by settlement or trial through any trial court proceeding[.]



The contract also contained a handwritten provision at the bottom of the page which stated, "We
also understand that if recovery is simply `limits-of-liability' which we would be entitled to `no
matter what,' there will be no fee."

 In considering the surrounding circumstances, the trial court correctly concluded
that the contract was ambiguous. The document referred to "my" claims but these claims were
based on Justin's injuries, as noted by the cross-out of "me" and the insertion of Justin's name
into the agreement. The original petition named Brown individually and as Justin's next friend. 
Additionally, a handwritten provision of the contract provided for a waiver of attorney's fees but
failed to define what would constitute "simply `limits-of-liability.'"

 Because the contingent fee contract was unclear as to whose claims were covered,
the court did not err in admitting the testimony of Brown and Galow who both stated that the
agreement was intended to cover Justin's claims. Their testimony was also necessary to clarify
the meaning of the terms "simply `limits-of-liability'" and "no matter what." See Wild v.
Hargrave, 565 S.W.2d 558, 560 n.1 (Tex. Civ. App.--San Antonio 1978, writ dism'd) ("details
which merely explain or clarify the essential terms appearing in the writing may ordinarily be
shown by parol"); Jon-T Farms, Inc. v. Goodpasture, Inc., 554 S.W.2d 743, 747 (Tex. Civ.
App.--Amarillo 1977, writ ref'd n.r.e.). The trial court correctly concluded that the contingent
fee agreement was ambiguous and did not err in admitting the testimony of the parties to clarify
the terms of the contract. We overrule Enochs' third and fourth points of error.

 We hold that the trial court did not err in awarding attorney's fees to Whitehurst
based on the contract. However, should we be mistaken, we will also address Enochs' and
Vaught's challenges to the trial court's award of attorney's fees based on the alternate ground of
quantum meruit.



 Quantum Meruit


 Enochs challenges the trial court's conclusion of law that if there were no contract
between Whitehurst and Justin, then Whitehurst established the elements required for recovery
under quantum meruit. By a no-evidence point, Vaught challenges the sufficiency of the evidence
for the underlying fact-findings supporting recovery under quantum meruit.

 Both Enochs and Vaught argue that the recovery of attorney's fees based on
quantum meruit was not before the court. They argue that Whitehurst did not file any pleadings
asserting quantum meruit. Enochs specifically contends that at trial, Galow judicially admitted
seeking attorney's fees solely on the basis of contract. Enochs further argues the trial court
judgment awarded attorney's fees only on the basis of a contingent fee contract. Vaught makes
a broader argument that the entire issue of attorney's fees was not pleaded and that Whitehurst is
not a proper party to the suit.

 There was extensive testimony and evidence before the court concerning the
attorney's fees for Whitehurst's representation of Justin. Neither Vaught nor Enochs objected to
the lack of pleadings or argued to the trial court that Brown could not raise the issue of
Whitehurst's attorney's fees. Rather, they challenged only the validity and interpretation of the
fee contract. Vaught and Enochs waived these pleading issues, and the claim for attorney's fees
under either contract or quantum meruit was tried by implied consent. Tex. R. Civ. P. 67, 90;
see Roark v. Stallworth Oil and Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991) ("unpleaded claims
or defenses that are tried by express or implied consent of the parties are treated as if they had
been raised by the pleadings."); Jess v. Libson, 742 S.W.2d 90, 92 (Tex. App.--Austin 1987, no
writ); Alford v. Alford, 601 S.W.2d 410, 411 (Tex. Civ. App.--Houston [14th Dist.] 1980, no
writ); Boozer v. Stephens, 509 S.W.2d 910, 913 (Tex. Civ. App.--Tyler 1974, no writ) (the record
may contain evidence which will support either contract or quantum meruit).

 The parties stipulated that the trial court would exercise its discretion and determine
an equitable distribution of the funds. (5) The trial court was authorized to award Whitehurst
reasonable and necessary attorney's fees for its representation of Justin. See Tex. Prop. Code
Ann. § 142.006 (West 1984); (6) Malouf v. Mulaula, 802 S.W.2d 268, 269 (Tex. App.--Waco 1990,
writ denied); Murray v. Templeton, 576 S.W.2d 138, 140 (Tex. Civ. App.--Texarkana 1978, no
writ). (7) In making an equitable apportionment, the trial court could consider alternate grounds in
determining the proper attorney's fees to be awarded. The court could find the contingent fee
contract valid and award Whitehurst a portion of the settlement funds as an assignee of Justin's
recovery. Alternatively, if the court believed the contract invalid, it could determine a reasonable
fee based on the services rendered.

 The trial court awarded attorney's fees totalling one-third of Justin's recovery
without specifying whether the award was based on the contract or quantum meruit. The court
also found that one-third of Justin's total recovery was a standard fee for the services rendered
and that the reasonable value of Whitehurst's services was $641,134, which is substantially equal
to one-third of the $1.9 million that Justin received. Thus, the court's judgment can be reconciled
with fact findings supporting recovery under quantum meruit.

 Enochs conceded at oral argument that he did not challenge the fact findings
supporting a quantum meruit recovery. Therefore, these findings are conclusively established and
binding on appeal. Whitten v. Alling & Cory Co., 526 S.W.2d 245, 248 (Tex. Civ. App.--Tyler
1975, writ ref'd). However, we will review Vaught's no-evidence challenge to the underlying
findings. In reviewing a no-evidence point, we must consider only the evidence and inferences
that tend to support the court's finding and disregard all evidence to the contrary. Alm v.
Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert. denied, 498 U.S. 847 (1990).

 To recover under quantum meruit, a claimant must prove that: (1) valuable
services were rendered; (2) for the person sought to be charged; (3) the services were accepted,
used, and enjoyed by the person sought to be charged; and (4) the acceptance, use, and enjoyment
was under such circumstances as reasonably notified the person sought to be charged that the
claimant, in performing such services, was expecting to be paid by the person sought to be
charged. Vortt Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990).

 In determining whether these elements had been met, the trial court found that: (1)
Whitehurst provided valuable legal services; (2) Brown knew before the services were rendered
that Whitehurst expected to be paid by Justin for services rendered on his behalf; and (3) Justin
received benefits exceeding $1.9 million due to Whitehurst's work.

 The evidence supports these findings and the trial court's award of attorney's fees
based on quantum meruit. Brown testified that she understood that Whitehurst's fee would be
one-third of Justin's recovery. Galow testified that a one-third fee was reasonable for a personal
injury case in Williamson County. He detailed the services rendered on Justin's behalf. He
testified regarding his efforts to secure the insurance proceeds by correspondence and by sending
a medical exhibit with videotapes of an eyewitness and Justin's doctor. Galow also spoke of his
work to keep Justin in the hospital and to keep him covered by Prudential, as well as how he
discovered the umbrella policy worth $2,000,000. Justin accepted these benefits by accepting the
settlement agreement through his guardian ad litem.

 Because recovery of attorney's fees was properly before the court and the evidence
supported recovery in quantum meruit, we overrule Enochs' second point of error and Vaught's
fifth and sixth points of error. We now address the trial court's apportionment of settlement funds
for Vaught's and Brown's loss of companionship with Justin.



Loss of Companionship 


 Enochs' last point of error challenges the trial court's award of settlement funds
to Justin's parents based on their loss of companionship due to their son's severe injuries. (8) 
Companionship comprises the positive benefits flowing from the love, comfort, companionship,
and society that a claimant would have received had the negligence not occurred. See Moore v.
Lillebo, 722 S.W.2d 683, 688 (Tex. 1986) (defining companionship for the wrongful death of a
child). Enochs argues that while the supreme court recently recognized a child's right to loss of
companionship for serious and permanent injuries to a parent, no corresponding recovery is
allowed to a parent whose child suffers similar injuries. We disagree.

 Injuries to the familial relationship are significant injuries worthy of compensation. 
Sanchez v. Schindler, 651 S.W.2d 249, 252 (Tex. 1983). In the past twenty years, the supreme
court has provided stronger protection to both spousal relationships and parent-child relationships. 
The supreme court has declared that either spouse has a cause of action for loss of companionship
for injury to the other spouse by a third party's negligence. Whittlesey v. Miller, 572 S.W.2d
665, 668 (Tex. 1978). Relying in part on Whittlesey, the court next declared that parents may
recover for loss of companionship for the wrongful death of a child. Sanchez, 651 S.W.2d at 251
(rejecting pecuniary loss limitation doctrine under wrongful death statute). In recognizing this
parental claim for loss of companionship, the supreme court stated that a parent's claim for
damages for loss of a child's companionship is closely analogous to loss of companionship of a
spouse. Id. at 252. Two years later, the supreme court held that children are entitled to recover
loss of companionship for the death of a parent. Cavnar v. Quality Control Parking, Inc., 696
S.W.2d 549, 551 (Tex. 1985). The court reasoned that there was no logical reason to treat the
death of any family member differently under the wrongful death statute. Id. Finally, relying on
these past decisions, the court held that a child has a cause of action for loss of companionship
for the non-fatal but serious injury to a parent. Reagan v. Vaughn, 804 S.W.2d 463, 466 (Tex.
1990). The court recognized that "the two relationships likely to be most severely affected by a
negligent injury to a person are the husband and wife relationship and that of the parent and
child[.]" Id.

 Within the supreme court's express recognition of a common law cause of action
for a serious injury to a spouse or parent lies the implicit recognition of a parent's claim for loss
of companionship for a similar injury to a child. The reasoning behind the court's previous
decisions reveals its recognition that the injury or death of a spouse, parent, or child causes a great
loss to the familial relationship that is worthy of compensation.

 There is no question that Justin, then eleven, suffered severe and permanent injuries
as a result of the accident. By deposition, Dr. Charlotte Smith testified that Justin suffered
damage to multiple regions of the brain. While he can nod yes or no, Justin is unable to speak. 
He has no control of his bowels or bladder and must wear diapers. Brown testified that she has
to feed and bathe Justin. Brown's husband testified that after the accident, at first Justin could
only crawl; he is now able to use a rolling walker. While he may improve with rehabilitation,
Dr. Smith stated that he will never be able to live independently. The loss of companionship that
Justin's parents suffer is real and tangible. We overrule Enochs' sixth point of error.

 Vaught challenges the trial court's unequal apportionment of proceeds for his and
Brown's loss of consortium: the trial court awarded Brown $50,000 and Vaught $15,000. 
Vaught contends that the overwhelming evidence shows that he and Brown enjoyed an equally
close relationship with Justin.

 We review the trial court's awards to Brown and Vaught for an abuse of discretion. 
As trier of fact, the court was entitled to weigh the testimony of Vaught and Brown and determine
their credibility. Belford v. Belford, 682 S.W.2d 675, 677 (Tex. App.--Austin 1984, no writ). 
Moreover, we believe that Justin's primary residence with Brown, the sole managing conservator,
is a reasonable basis for awarding a greater portion of the settlement proceeds to her. Two factors
to be considered in awarding loss of companionship are the living arrangements of the parties and
the relationship between the parent and child. See Moore, 722 S.W.2d at 688 (awarding damages
in wrongful death action). By having custody of Justin, Brown had a daily relationship with Justin
that Vaught did not enjoy. The trial court did not abuse its discretion in considering these factors. 
We overrule Vaught's fourth point of error.



CONCLUSION


 The trial court did not err in concluding that Vaught had no standing and that
Enochs was estopped from challenging the validity of the contingent fee contract. Government
Code section 82.065 did not invalidate the contingent fee contract and its purposes were met. 
Moreover, sufficient evidence also supports the award of attorney's fees under the alternative
ground of quantum meruit. Finally, the court did not err in awarding loss of companionship
recovery to Justin's parents or in its apportionment of the awards between them. Accordingly,
we affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Justices Aboussie, Jones and B. A. Smith

Affirmed

Filed: March 16, 1994

Publish

1.   In its fortieth fact finding, the trial court expressly found that securing the policy
limits of $2,325,000 was due solely to the legal work of Whitehurst. Enochs and Vaught
do not challenge this finding.
2.   State Farm Mutual Auto Insurance Company intervened on January 4, 1992, to
tender to the registry of the court $25,000 from a policy insuring Brown and Justin for
uninsured/underinsured motorist coverage.
3.   The 1993 amendment combined these provisions; the sole managing conservator's
exclusive right of representation is now listed in Family Code section 14.02(b)(3)(C). See
Tex. Fam. Code § 14.02(b)(3)(C) (West Supp. 1994).
4.   Vaught relies on Urbish to support his contention that he has standing. In Urbish, the
supreme court entertained the father's challenge to his wife's representation of their son in a
personal injury case. However, in that case there was no court-appointed conservatorship in
effect at the time the mother filed suit, and the father was subsequently appointed the sole
managing conservator. See Urbish, 708 S.W.2d at 431. 
5.   This stipulation is noted in the trial court's unchallenged finding of fact number
two.
6.   Section 142.006 provides, "If any person claims an interest in property subject to
management under this chapter, the court having authority over the property may hear
evidence on the interest and may order the claim or the portion of the claim found to be
just to be paid to the person entitled to receive it." Chapter 142 governs management of
property recovered in a suit by a next friend. We note also that, under the contingency
fee contract, Whitehurst is an assignee of one-third of Justin's recovery, and therefore
claims an interest in the property recovered.
7.   The court in Murray v. Templeton interpreted the predecessor of section 142.006 of the
property code to authorize the trial court to allow reasonable attorney's fees paid directly to
the attorney out of the minor's recovery in a next friend proceeding for prosecution of the
minor's claim. See Murray, 576 S.W.2d at 140. We recognize that during this litigation the
court appointed a guardian ad litem for Justin. However, at the time the contract was created,
Brown was acting under her exclusive power to represent Justin as sole managing conservator. 
Moreover, the guardian ad litem was appointed several months after Whitehurst had rendered
the legal services on Justin's behalf, securing $2,325,000 in benefits. Therefore, the trial
court had authority to award attorney's fees under section 142.006 of the property code. See
Tex. Prop. Code Ann. § 142.006 (West 1984).
8.   Loss of companionship is also referred to as loss of consortium. For the sake of
consistency, we will refer to this cause of action as loss of companionship.