**ROLLINGWOOD TRUST NO. 10 and Thom Farrell, Trustee, Appellants,**

**v.**

**Robert E. SCHUHMANN, Ernestine Schuhmann Rainey and Ellen Schuhmann Norwood, Appellees.**

No. 03–98–00113–CV

Court of Appeals of Texas, Austin.

Dec. 17, 1998.

Rehearing Overruled Feb. 25, 1999.

**314**

Travis R. Phillips, Phillips & Merica, P.C., Austin, for appellants.

Patricia D. Pope, McGinnis, Lochridge & Kilgore, L.L.P., Austin, for appellees.

Before Chief Justice ABOUSSIE, Justices POWERS and KIDD.

JOHN POWERS, Justice.

Rollingwood Trust No. 10 ("Rollingwood") and its trustee Thom Farrell appeal from a summary judgment against them in a suit brought by Robert Schuhmann, Ernestine Schuhmann Rainey, and Ellen Schuhmann Norwood (the "Schuhmanns"). We will reverse the summary judgment and remand the cause to the trial court.

## THE CONTROVERSY

The Schuhmanns entered into a contract with James Ferguson ("Ferguson") giving him an election to purchase, within seventy-five days and for $298,000, the Schuhmanns' 130–acre tract of land in Travis County. The option contract provided that a "Farm and Ranch Earnest Money Contract," executed by the parties, would become effective if and when Ferguson notified the Schuhmanns that he elected to purchase the land.

Before expiration of the seventy-five days fixed in the option contract, the Schuhmanns and Ferguson agreed to extend the term of the option contract to July 1, 1994, and the "closing" date for consummation of any sale to August 1, 1994. Ferguson paid the Schuhmanns $1,000 for the extension.

Ferguson notified the Schuhmanns on July 1, 1994, that he elected to purchase the property, stating in the notice that he had assigned his rights in the earnest-money contract to Rollingwood. Pursuant to the earnest-money contract, Ferguson deposited $5,000 in earnest money with First American Title Company.

Before the August 1, 1994, "closing" date a dispute arose over the sufficiency of a survey required by the earnest-money contract. The Schuhmanns delivered the survey to Rollingwood on July 27, 1994. Rollingwood objected to the survey based upon items omitted from the survey that Rollingwood believed the contract required. The Schuhmanns obtained a revised survey and delivered it to Rollingwood on the "closing" date. Rollingwood again objected and the "closing" date passed without consummation of the sale and purchase.

The Schuhmanns demanded that the title company pay them the $5,000 earnest-money deposit. Rollingwood refused to consent to the payment, insisting that Rollingwood retained a right to purchase the Schuhmann tract when the Schuhmanns provided a survey that complied with what the earnest-money contract required. The Schuhmanns sued in the present cause for declaratory relief that Rollingwood had no contractual right to purchase the tract and that the Schuhmanns were entitled to the earnest money. The trial court sustained their motion for summary judgment to that effect.

## DISCUSSION AND HOLDINGS

The Schuhmanns' motion for summary judgment was based on two grounds. The first ground was that Ferguson did not effectively extend the expiration date of the option contract; therefore, the option was not exercised in a timely manner and the earnest-money contract never became effective. *See Casa El Sol–Acapulco v. Fontenot,* 919 S.W.2d 709, 717 n. 9 (Tex.App.—Houston [14th Dist.] 1996, writ dismissed by agreement). The Schuhmanns' second ground was that Rollingwood failed to accept a survey that complied with the earnest-money con-

tract. In its sole point of error, Rollingwood argues that genuine issues of material fact precluded summary judgment on either ground.

◼ The district court did not specify the ground on which it based its summary judgment order. When a trial court does not specify the ground on which it granted summary judgment, the judgment will be affirmed on any meritorious theory, asserted in the motion and found in the record, that proves conclusively that the nonmovant cannot prevail. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). We review the record under familiar precepts: (1) a movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed issue of material fact precluding summary judgment, matters in the record that favor the nonmovant will be taken as true; and (3) every reasonable inference from the record must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

### Extension of the Option Expiration Date

◼ Neither the option contract nor the underlying earnest-money contract prohibited assignment. In the absence of a provision to the contrary, an option to purchase real property may be assigned by the optionee. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 596 (Tex.1992); *Central Power & Light Co. v. Purvis*, 67 S.W.2d 1086, 1088 (Tex.Civ.App.—San Antonio 1934, writ ref'd); *Hallman v. Safeway Stores, Inc.*, 368 F.2d 400, 403 (5th Cir.1966). The parties agree that Ferguson assigned his contract rights to Rollingwood *before* he executed the agreement extending the option expiration date to July 1, 1994. The parties disagree regarding whether Ferguson had authority to enter into the agreement.

The Schuhmanns argue that Ferguson's attempt to extend the option expiration date was a nullity because he had previously assigned to Rollingwood his rights under the option contract and the earnest-money con-

tract. Therefore, the Schuhmanns contend, the original option expiration date of May 16 remained in effect. And because Rollingwood, Ferguson's assignee, failed to exercise the option by May 16, the Schuhmanns argue the option expired and the underlying earnest-money contract never became binding.

◼ "[A]n option contract gives the optionee the right to elect to purchase the property at stated terms within a specified period of time, but with no obligation to do so." *Lefevere v. Sears*, 629 S.W.2d 768, 770 (Tex.Civ.App.—El Paso 1981, no writ). Ferguson assigned the option contract to Rollingwood on April 8, 1994. When Ferguson extended the term of the option contract on May 16, 1994, he was not acting on his own behalf because his rights in the option contract had been extinguished as a matter of law by the assignment. *See Hallman*, 368 F.2d at 403.

Did Ferguson act for Rollingwood, his assignee, in executing the extension agreement? When Ferguson was asked in a deposition if he intended to act as an "agent" for Rollingwood when he executed the extension, he simply responded, "No." The Schuhmanns argue that the intent to act as an agent is an essential element of the relationship between principal and agent. *See Stanford v. Dairy Queen Prods. of Tex.*, 623 S.W.2d 797, 801 (Tex.App.—Austin 1981, writ ref'd n.r.e.).

◼ The question of agency is one of ultimate fact derived from underlying facts and may be found from either direct or circumstantial evidence. *Norton v. Martin*, 703 S.W.2d 267, 272 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). When the underlying facts are established, whether the relationship of principal and agent exists is a question of law for the court. *Id.*

Ferguson's "No" response to the lawyer's question, concerning the nature of his relationship to Rollingwood, does not in isolation establish conclusively that Ferguson was not an agent. We must consider all the surrounding circumstances shown in the summary judgment record. In opposing the Schuhmanns' motion for summary judgment, Rollingwood's trustee (Farrell) swore he arranged for Ferguson to "perfect" the option

transaction for Rollingwood. Ferguson corroborated this statement in answering as follows questions posed to him on deposition by the Schuhmanns' lawyer:

Q: Were you acting for the benefit of Thom Farrell or Rollingwood Trust Number 10 when you signed this extension?

A: They had asked for more time, yes.

Q: Mr. Ferguson, when you signed this extension agreement, did Thom Farrell or Rollingwood Trust Number 10 have control over you in your execution of this agreement or the right to control your execution of this agreement?

A: I don't know what you mean by that. I mean, the man doesn't control me or anything anyway. *I mean, he asked for time and I got an extension on it.*

(emphasis added).

■ An agency relationship does not depend upon express appointment or assent by the principal; the relationship may be implied from the conduct of the parties under the circumstances. *See Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992). In assessing the evidence, one need not search for any particular form of appointment. "The authority to do an act can be created by written or spoken words or conduct of the principal which reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." 2A C.J.S. *Agency* § 42 (1972).

It is undisputed that Rollingwood asked Ferguson to act for Rollingwood in obtaining the extension. The appointment was thus express and for a special purpose. It is undisputed that Ferguson performed the act requested of him and, under the circumstances shown, he could only have acted for Rollingwood. He could not have acted for himself in obtaining the extension because he had parted with his interest in the option contract in consideration of Rollingwood paying him $50,000. The question of a principal's control of his agent must be considered in these circumstances. Had Ferguson failed to perform the requested act, it is evident that Rollingwood could have discharged him as its agent. Indeed, it appears that Rollingwood would have been entitled in equity to compel him either to obtain the extension or refund the $50,000. We believe this is sufficient in the circumstances shown to satisfy the control necessary for an agency relationship. *See* 2A C.J.S. *Agency* § 6 (1972). We hold accordingly.

■ Moreover, in determining whether an option right can be enforced, a fundamental question to be resolved is whether the option contract is supported by sufficient consideration. *See Pace Corp. v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 344 (Tex.1955). The Schuhmanns accepted $1,000 from Ferguson in consideration of the May 16 extension agreement and cannot now contend Ferguson failed to extend the expiration date because he was acting without authority. *See Enochs v. Brown,* 872 S.W.2d 312, 317 (Tex.App.—Austin 1994, no writ) (applying doctrine of quasi-estoppel to preclude a party from maintaining position inconsistent with one in which they accepted a benefit).

We conclude that a summary judgment, based on an alleged failure to exercise the option in a timely manner, was erroneous.

### Performance Under the Earnest Money Contract

■ The Schuhmanns' second ground for summary judgment attacked Rollingwood's failure to comply with the earnest-money contract based on a claim that the survey was insufficient. The earnest-money contract provided that Rollingwood's objections to the survey would require the Schuhmanns to cure the objections within twenty days after receiving them and "the Closing Date shall be extended as necessary." The Schuhmanns contend that Rollingwood's objections to the original and revised survey were frivolous and failed to extend the August 1 closing date, resulting in a default by Rollingwood under the terms of the earnest-money contract. Rollingwood rejoins that whether the Schuhmanns ever furnished a survey that complied with the requirements of Article 6(c)(2) of the earnest-money contract is a question of fact to be determined after a trial.

Article 6(c)(2) of the contract provides:

The survey shall be made by a Registered Professional Land Surveyor acceptable to the title company and any lender. The plat shall: (a) identify the Property by metes and bounds or platted lot description; (b) show that the survey was made and staked on the ground with corners permanently marked; (c) set forth the dimensions and total area of the property; (d) show the location of all improvements, highways, streets, roads, railroads, rivers, creeks or other waterways, fences, easements and rights of way on the Property with all easements and rights of way referenced to their recording information; (e) show any discrepancies or conflicts in boundaries, any visible encroachments, and any portion of the Property lying within the 100 year floodplain as shown on the current Federal Emergency Management Agency map; and (f) contain the surveyor's certificate that the survey as shown by the plat is true and correct.

After receiving the original survey, Rollingwood objected that the plat did not show: (1) that the survey was made and staked on the ground with corners permanently marked; (2) the location of all roads, rivers, creeks, other waterways, and fences; and (3) whether any portion of the property lay within the 100–year flood plain as shown on the current Federal Emergency Management Agency ("FEMA") map. After receiving the revised survey, Rollingwood objected to what it characterized as unacceptable "approximations" of the location of the 100–year flood plain, creeks, other waterways, and fences. Rollingwood has since conceded that the revised survey's depiction of the 100–year flood plain was adequate. We must consider whether questions of material fact remain concerning the extension of the closing date by reason of Rollingwood's other objections to the revised survey.

Several affidavits attached to Rollingwood's response to the Schuhmanns' motion for summary judgment addressed the insufficiency of the revised survey in its depiction of creeks, other waterways, and fences. In his affidavit, Farrell described several areas in which the revised survey failed to meet the requirements of the earnest-money contract.

The omissions included: a failure to show various fences, a failure to depict and locate a pool situated at the head waters of a creek, and a failure to include an additional pond located toward Victorine Lane (a roadway). The affidavits of both Ferguson and Roy Smith, a registered professional land surveyor who was hired by the Schuhmanns to prepare both the original and revised survey, echo Farrell's description of the revised survey. Of particular significance is Smith's statement that, "There may be other ponds on the Schuhmann Property but they are not located on the Revised Survey. As I was not instructed to locate ponds, the reason the one pond is located on the Revised Survey, was to show the end of the creek."

In their motion for summary judgment and their reply to Rollingwood's response, the Schuhmanns offered no summary judgment support of why Rollingwood's objections to the revised survey were invalid or frivolous. The Schuhmanns' summary judgment "evidence" concerning the survey dealt exclusively with Rollingwood's FEMA-based objections. The Schuhmanns' allegation that Rollingwood's "literal reading" of the survey requirements would result in absurdity is not enough to sustain summary judgment. The summary judgment record does not, therefore, establish as a matter of law that Rollingwood defaulted under the contract for sale by failing to close on the designated closing date. We hold accordingly.

Having reached a decision based on the first subsection of Rollingwood's sole point of error, we need not consider the second subsection. We therefore reverse the summary judgment and remand the cause to the trial court.