Scott Sanes and J.W. Stringer v. Clayton A. Clark










 





IN THE
TENTH COURT OF APPEALS
 

No. 10-99-014-CV

     SCOTT SANES AND J.W. STRINGER,
                                                                         Appellants
     v.

     CLAYTON A. CLARK, ERNEST H. CANNON,
     ST. PAUL SURPLUS LINES INSURANCE
     COMPANY, SCOTTSDALE INSURANCE 
     COMPANY, AND WESTCHESTER FIRE 
     INSURANCE COMPANY,
 
                                                                         Appellees
 

From the 278th District Court
Madison County, Texas
Trial Court # 97-8291-278-10
                                                                                                                
                                                                                                            
O P I N I O N
                                                                                                                
   
      Clayton A. Clark filed a declaratory judgment action against Ernest H. Cannon in
Madison County to determine whether Clark was authorized to sign Cannon’s name to a
settlement and indemnity agreement. Clark executed this agreement with the defendants in an
underlying lawsuit in settlement of the claims of Joe and Mimi Staton, Clark’s and Cannon’s
clients. Clark joined Scott W. Sanes, J. W. Stringer, St. Paul Surplus Lines Insurance
Company, Scottsdale Insurance Company, Westchester Fire Insurance Company, Lloyd
Thompson, Inc., and Hartford Insurance Company, as defendants, because his claims against
them arise from the same transaction and because they “would be affected by the declaration”
sought. See Tex. Civ. Prac. & Rem. Code Ann. §§ 15.005 (Vernon Supp. 2000), 37.006(a)
(Vernon 1997).
      Sanes and Stringer filed a motion to transfer venue to Harris County. The court denied
the motion and granted partial summary judgments in favor of Clark, Cannon, St. Paul,
Scottsdale, and Westchester. Clark, Sanes and Stringer non-suited their claims against Lloyd
Thompson and Hartford. The court disposed of any remaining claims by the inclusion of a
Mother Hubbard clause in the final judgment. Sanes and Stringer claim in six issues that the
court erred by: (1) failing to transfer venue to Harris County; and (2) granting the summary
judgment motions of Cannon, Scottsdale,


 Westchester, St. Paul, and Clark (five issues).
BACKGROUND
      On November 10, 1995, Joe Staton suffered injuries rendering him a quadriplegic while
working in Louisiana for Rhinestone Express, a Houston trucking company. Rhinestone
personnel assured Joe’s wife, Mimi, that Noble Drilling (U.S.), Inc., the company on whose
premises he was injured, would take care of his medical bills. Nevertheless, Mimi remained
concerned about payment of the bills and expressed her concerns to Rhinestone owner Rickie
Kubiak. Kubiak advised Mimi that Stringer could probably help her and arranged for them to
talk the next morning.


 
      After talking with Mimi by telephone on November 15, Stringer faxed two contingent fee
contracts to Mimi at the intensive care unit of the Louisiana hospital where Joe lay in a semi-conscious state. On that same date, Mimi signed one contract on her own behalf, signed Joe’s
name to the other, and faxed the documents back to Stringer in Houston. Stringer secured the
assistance of Sanes on November 15 as well. Sanes and Stringer promptly arranged for Joe’s
transfer by air ambulance to a Houston hospital. They filed suit against Noble Drilling and
others in Cameron County on November 17.
      The Statons advised Sanes and Stringer respectively by letters dated November 28 and
November 30 that they had decided to retain Cannon to represent them. They asked Sanes and
Stringer to contact Cannon to discuss payment of their out-of-pocket expenses. Mimi signed a
contingency fee contract with Cannon on December 4, “individually and as next friend of Joe
Staton.” One month later, Cannon retained the services of Clark to assist him in the
prosecution of the suit. Mimi signed a separate contract with Clark on May 20, 1996.
      Sanes promptly advised St. Paul and Hartford, two of the insurer carriers for the Cameron
County defendants, that Stringer and he did not intend to relinquish their claim for attorney’s
fees. Cannon sent a letter to Sanes on December 4 encouraging him to “pause a moment in the
client’s interest and argue about the lawyer’s fees later.” In February 1996, Sanes sent a letter
to defense counsel in the Cameron County litigation advising of their continued claim.
      Clark settled the Statons’ claims in February 1997 for $7.125 million. The parties signed
the settlement agreement in Clark’s offices, with Clark signing for both himself and Cannon. 
In the agreement, the Statons agreed to indemnify the defendants and their insurers from any
further claims with respect to the incident which formed the basis of their lawsuit. Clark
distributed the settlement proceeds pursuant to the Statons’ instructions.
      Sanes and Stringer discovered that the case had settled when Sanes received a
reimbursement check in the amount of $3,881 for his out-of-pocket expenses. On March 4,
Sanes sent a letter to Hartford and St. Paul requesting payment of his forty-percent contingency
fee. One week later, Sanes sent a similar letter to defense counsel in the Cameron County
litigation with copies to Clark, Stringer, Hartford, and St. Paul.
      Clark filed the present suit in Madison County in April 1997. He alleges in his petition
that Cannon has denied giving him permission to sign Cannon’s name “giving indemnity to
anyone.” Clark asserts that venue is proper in Madison County because Cannon resides there
and because a substantial part of the events giving rise to Clark’s claim occurred there, as he
had numerous conversations with Cannon about the settlement of the Statons’ claims at
Cannon’s residence and office in Madison County. 
      Clark sought to resolve Sanes’s and Stringer’s contingency-fee claim in this lawsuit as
well, so he joined all parties potentially liable on their claim. Clark alleges that venue is
proper in Madison County as to the contingency-fee claim because the parties to this claim will
be “affected by the declaration” sought and because this claim arises from the same transaction
as his dispute with Cannon. See Tex. Civ. Prac. & Rem. Code Ann. §§ 15.005, 37.006(a).
      Sanes and Stringer filed a motion to transfer venue to Harris County where they reside and
office. Clark responded by asserting that venue is proper as to Cannon because he resides in
Madison County and they discussed the settlement there and because his claims regarding
Sanes and Stringer arise from the same transaction. The court denied the motion to transfer
venue.
      The court granted summary judgment motions filed by Clark, Cannon, Scottsdale,
Westchester and St. Paul in separate orders. The court denied Sanes’s and Stringer’s motion
for summary judgment against Westchester and St. Paul. Clark non-suited his claim against
Hartford. Sanes and Stringer non-suited their cross-claims against Hartford, Lloyd Thompson
and the Cameron County defendants whom they named in their third-party petition. The court
disposed of any remaining claims by the inclusion of a Mother Hubbard clause in the final
judgment.
VENUE
      Sanes and Stringer challenge the court’s denial of their motion to transfer venue in their
first issue. They claim that venue is improper in Madison County because no real dispute
exists between Clark and Cannon regarding Clark’s authority to sign the settlement agreement.
      Properly pleaded venue facts are taken as true unless specifically denied. GeoChem Tech
Corp. v. Verseckes, 962 S.W.2d 542, 543 (Tex. 1998); Tex. R. Civ. P. 87(3)(a). Sanes and
Stringer did not deny in their motion to transfer venue that Cannon resides in Madison County
or that Clark and Cannon discussed the settlement agreement there. These are the facts on
which Clark relied to establish venue in Madison County. Because Sanes and Stringer did not
specifically deny these venue facts, Rule of Civil Procedure 87(3)(a) mandates that they be
taken as true. See Bleeker v. Villarreal, 941 S.W.2d 163, 175 (Tex. App.—Corpus Christi
1996, writ dism’d by agr.) (op. on reh’g); Maranatha Temple, Inc. v. Enterprise Prods. Co.,
833 S.W.2d 736, 740 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Thus, the court did
not err by denying the motion to transfer venue.


 Accordingly, we overrule Sanes’s and
Stringer’s first issue.
PROPRIETY OF SUMMARY JUDGMENT 
      Sanes and Stringer argue in their second, fourth, fifth and sixth issues respectively that the
court erred in granting Cannon’s, Westchester’s, St. Paul’s, and Clark’s (collectively,
“Appellees”) motions for summary judgment. Appellees asserted numerous grounds for
summary judgment in their motions. The trial court granted their motions without stating the
basis for its ruling.
Standard of Review
      To prevail on a summary judgment motion, the movant must demonstrate that there are no
genuine issues of material fact and that it is entitled to judgment as a matter of law. American
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Prop. Mgt. Co.,
690 S.W.2d 546, 548 (Tex. 1985). We disregard all conflicts in the evidence and accept the
evidence favoring the nonmovant as true. Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965); Kehler v. Eudaly, 933 S.W.2d 321,
324 (Tex. App.—Fort Worth 1996, writ denied). We indulge every reasonable inference from
the evidence in favor of the nonmovant and resolve any doubts in its favor. American
Tobacco, 951 S.W.2d at 425. “When the trial court does not specify the basis for its summary
judgment, the appealing party must show it is error to base it on any ground asserted in the
motion.” Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).
Sanes
      Appellees allege an entitlement to judgment against Sanes because he has no written
contract with the Statons. Sanes does not dispute that he has no written contract. Rather, he
argues that a fact issue exists on the question of whether the Statons notified him of their intent
to avoid their alleged agreements with him. 
      Section 82.065 of the Government Code expressly provides that contingent fee contracts
must be in writing. Tex. Gov. Code Ann. § 82.065(a) (Vernon 1998). An oral contingent
fee contract is voidable by the client. See id. § 82.065(b) (Vernon 1998); see also Enochs v.
Brown, 872 S.W.2d 312, 318 (Tex. App.—Austin 1994, no writ). Sanes contends that a
question of fact exists on the issue of whether the Statons ever expressly notified him of an
intention to avoid their alleged agreements. He refers to the letters Mimi wrote to Stringer and
himself less than two weeks after she signed the contracts with Stringer. 
      In these letters, she advised them:
      1.   she had decided to retain other counsel (Cannon);
 
      2.   she desired that they send the file to Cannon;
 
      3.   Cannon “w[ould] be solely handling” the case;
 
      4.   Sanes and Stringer “w[ould] no longer be associated with the case”;
 
      5.   they should forward a list of their expenses to Cannon for reimbursement; and
 
      6.   she appreciated their efforts in the Statons’ behalf.

By these letters, Mimi clearly and unequivocally informed Sanes and Stringer that she was
terminating the attorney-client relationship created by the contracts she signed with Stringer
and arguably by Stringer’s retention of Sanes. Thus, she expressly informed them of her intent
to avoid the alleged agreements.
      Because Sanes has no written contract with the Statons, their alleged agreements to allow
him to represent them on a contingent-fee basis are voidable. See Tex. Gov. Code Ann. §
82.065(b); Enochs, 872 S.W.2d at 318. Mimi gave Sanes express notice of her intent to avoid
their alleged agreements. Accordingly, Appellees conclusively established their entitlement to
judgment as a matter of law as against Sanes. See American Tobacco Co., 951 S.W.2d at 425;
Nixon, 690 S.W.2d at 548.
Stringer
      One of the grounds on which Appellees challenge Stringer’s contracts with Joe and Mimi
is that the contracts authorize Stringer to settle the case without the consent of his clients. See
Tex. Disciplinary R. Prof’l Conduct 1.0(2)(a)(2), reprinted in Tex. Gov. Code Ann., tit.
2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9). Rule 1.02(a)(2) mandates
that an attorney “abide by a client’s decision” regarding whether to accept a settlement offer. 
Id. The comments following this Rule provide in pertinent part:
2. Except where prior communications have made it clear that a particular proposal
would be unacceptable to the client, a lawyer is obligated to communicate any
settlement offer to the client in a civil case. . . .
 
3. A lawyer should consult with the client concerning any such proposal, and
generally it is for the client to decide whether or not to accept it. This principle is
subject to several exceptions or qualifications. First, in class actions a lawyer may
recommend a settlement of the matter to the court over the objections of named
plaintiffs in the case. Second, in insurance defense cases a lawyer's ability to
implement an insured client's wishes with respect to settlement may be qualified by
the contractual rights of the insurer under its policy. Finally, a lawyer's normal
deference to a client's wishes concerning settlement may be abrogated if the client has
validly relinquished to a third party any rights to pass upon settlement offers.

      . . . .
 
5. An agreement concerning the scope of representation must accord with the
Disciplinary Rules of Professional Conduct and other law. Thus, the client may not
be asked . . . to surrender . . . the right to settle or continue litigation that
the lawyer might wish to handle differently.

Tex. Disciplinary R. Prof’l Conduct 1.02 cmts. 2, 3, 5.
      Stringer’s contracts each provide in pertinent part:
I/We fully authorize my said attorney to bring suit, if necessary, and to prosecute
the same to final judgment and to compromise and settle this claim, with or without
suit, in any manner which they may deem necessary, including signing my/our names
to finalize such settlement.

The contracts authorize Stringer to settle the Statons’ claims without any further consultation
with the Statons. This clearly violates Rule 1.02(a)(2). See id. 1.02(a)(2) & cmts. 2, 3, 5. 
Because the contracts violate this rule, they are voidable at the Statons’ option. See Tex. Gov.
Code Ann. § 82.065(b); Enochs, 872 S.W.2d at 318.
      We have already determined that the Statons notified Stringer of their intent to avoid the
contracts. Therefore, Appellees conclusively established their entitlement to judgment as a
matter of law as against Stringer. Accordingly, we overrule Sane’s and Stringer’s second,
fourth, fifth and sixth issues. 
 

      We affirm the judgment.
 
                                                                   REX D. DAVIS
                                                                   Chief Justice


Before Chief Justice Davis
            Justice Vance and
            Justice Gray
Affirmed
Opinion delivered and filed July 26, 2000
Publish