**Tommy D. NEWSOM, Appellant,**

v.

**Peggy Lynn PETRILLI, Appellee.**

**No. 03–95–00399–CV.**

Court of Appeals of Texas,
Austin.

April 3, 1996.

Rehearing Overruled May 1, 1996.

**482**

John F. Campbell, Campbell & Morgan, P.C., Austin, for Appellant.

H. Frank Harren, III, Law Offices of H. Frank Harren, Austin, for Appellee. ·

Before POWERS, JONES and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

This appeal presents two questions: (1) Whether the original divorce decree contained a clerical error that allowed the trial court to enter a judgment *nunc pro tunc* dividing disability benefits; and (2) whether the disability benefits at issue are community property subject to division upon divorce. Because the answer to both questions is yes, we will affirm the trial court's judgment.

## BACKGROUND

Peggy Lynn Petrilli (formerly Peggy Lynn Newsom) and Tommy Newsom were divorced in 1988 after seventeen years of marriage. In 1990, Newsom was retired from the Austin Fire Department with a disability and began receiving monthly disability benefits of approximately $1700. The examining physician attributed Newsom's disability at least in part to deterioration of a condition growing out of a head injury suffered prior to the marriage. Newsom did not notify appellee of the disability payments and did not remit to her any portion of the benefits received, which by the time of trial totalled approximately $85,000.

In 1994, after learning of Newsom's disability benefits, Petrilli brought this action seeking to collect fifty percent of the disability benefits Newsom had earned during the marriage. The original divorce decree awards one-half of "Respondent's" insurance, pension and retirement benefits to each party; it does not mention "Petitioner's" employment benefits. Newsom, the only party who was employed at the time of the divorce, was the Petitioner; Petrilli, the Respondent, had not been employed for over fifteen years.[1] Petrilli argued that the reference to "Respondent's" employment benefits was a clerical error in the original decree and asked the court to enter a *nunc pro tunc* judgment awarding one-half of the community interest in "Petitioner's" employment benefits to each party. In the alternative, she asked the court to partition Newsom's employment benefits if they had not been divided by the divorce decree. The trial court found that the substitution of Respondent for Petitioner was a clerical error and entered a *nunc pro tunc* judgment making the change, in effect awarding fifty percent of Newsom's disability benefits earned during marriage to Petrilli. The trial court did not render judgment regarding the $85,000 in benefits that Newsom had already collected but ordered the parties to mediation to resolve this issue. In this same postdivorce hearing, the trial court denied Newsom's request that his child support obligation be reduced, granted Petrilli's motion to extend child support beyond eighteen years of age for the parties' disabled son, and awarded attorney's fees to Petrilli. Newsom does not complain of the child support decision or the attorney's fee award in this appeal.

Newsom brings three points of error regarding the *nunc pro tunc* judgment: (1) that the error in the original decree was not

---

**1.** At the hearing below, Petrilli testified that early in her marriage she had withdrawn the small amount of teacher retirement she had earned to make a down payment on a home for the parties.

a clerical error that would permit the entry of a judgment *nunc pro tunc*; (2) that the disability benefits at issue here were his separate property not subject to division upon divorce; and (3) that, by clarifying what portion of the present disability benefits were community property, the court exceeded the bounds of a permissible *nunc pro tunc* judgment under Rule 316. Tex.R.Civ.P. 316.[2]

## CLERICAL ERROR

■ In his first point of error, appellant argues that substituting Respondent for Petitioner in the decree's award of employment benefits was a judicial rather than a clerical error. We begin by noting that the divorce decree sets forth: "It is the intent of the court, Petitioner and Respondent to provide for an even 50/50 division between Petitioner and Respondent of all community debts, all non-exempt community property, and all [exempt] community property. . . ." This Court must construe the original judgment "as a whole toward the end of harmonizing and giving effect to all the court has written." *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex.1976). To divide "Petitioner's" employment benefits 50/50 would accomplish the intent of the parties; to divide "Respondent's" employment benefits 50/50 would render the employment benefits provision meaningless, since respondent had no benefits arising out of her employment during marriage, and further would fail to make any award of a significant asset of the parties. The attorney who drafted the original decree testified that when Newsom's attorney submitted a draft proposal awarding Newsom all of his retirement benefits, she objected and specifically changed the language to provide for an *equal* division of the employment benefits, to which the parties agreed. She further testified that in making the agreed upon change, she inadvertently provided for an equal division of "Respondent's" rather than "Petitioner's" employment benefits. We agree with the trial court that this was clearly a clerical error, not a "judicial" error as appellant claims.

This Court has distinguished judicial and clerical errors:

A clerical error is one which does not result from judicial reasoning or determination. For the judgment *nunc pro tunc* to be valid, the error must arise in the entry of the judgment, and not in its rendition. As a result, whenever the judgment entered by the court incorrectly records the judgment rendered, the error is clerical, so long as a product of judicial reasoning is not involved.

*Nolan v. Bettis*, 562 S.W.2d 520, 522 (Tex. Civ.App.—Austin 1978, no writ) (citations omitted).

■ Appellant relies on *Dikeman v. Snell*, 490 S.W.2d 183 (Tex.1973), to assert that an error made in a judgment prepared by an attorney becomes a "judicial" error when that judgment is entered by the court. Such an interpretation is clearly a misreading of that case and would eliminate any possibility of clerical error, since almost all judgments today are drafted by the successful attorney for the judge's signature. In *Dikeman*, the original judgment required a property owner to build a fence constructed of specified materials, of a certain thickness running in a particular direction. *Id.* at 184. The *nunc pro tunc* judgment considerably altered the specifications to mandate an entirely different fence. *Id.* at 185. Because these modifications effected substantial changes and were not made to correct any clerical error, the appellate court held the *nunc pro tunc* judgment void. By contrast, there is satisfactory evidence that the use of the word "Respondent" in this original divorce decree was a clerical error, which the trial court was at liberty to amend through a judgment *nunc pro tunc*. We overrule the first point of error.

■ In his third point of error, Newsom complains that the judgment entered by the trial court more resembles a "clarification" order than a judgment *nunc pro tunc*. *See* Tex.Fam.Code § 3.72 (West 1993). The

2. Clerical mistakes in the record of any judgment may be corrected by the judge in open court according to the truth or justice of the case after notice of the motion therefor has been given to the parties interested in such judgment, as provided in Rule 21a, and thereafter the execution shall conform to the judgment as amended.

judgment entered below does clarify what percentage of the present disability benefits was earned during marriage and hence was community property. Because Newsom continued his service with the Austin Fire Department after the divorce in 1988 until he was retired with a disability in August 1990, it was necessary for the court to calculate what percentage of those benefits was community property and to award Petrilli one-half of the community property portion of those benefits, rather than one-half of the total disability benefits. Newsom benefitted from this "clarification." His other arguments, that the court should reassess the current equities of the parties rather than enter a *nunc pro tunc* judgment, have been foreclosed by our discussion of the first point of error.

■ Appellant also argues in his third point of error that the trial court was not authorized to divide the community assets under Texas Family Code section 3.90(c), which imposes a two-year statute of limitations on a complainant. Tex.Fam.Code Ann. § 3.90(c) (West 1993). Appellant has failed, however, to raise such argument in a separate point of error, pursuant to Rule 74(d) of the Texas Rules of Appellate Procedure. More significantly, appellant did not refer to any authority to support this argument and did not provide any convincing evidence on which to base his contention. *See Wright v. Gernandt*, 559 S.W.2d 864, 872 (Tex.Civ. App.—Corpus Christi 1977, no writ). We therefore decline to consider such an argument and overrule the third point of error.

## DISABILITY BENEFITS AS COMMUNITY PROPERTY

■ Appellant contends in his second point of error that the trial court erred in dividing appellant's disability income because it is his separate property. Texas courts have generally held that benefits similar to those Newsom receives are community property. *See Busby v. Busby*, 457 S.W.2d 551, 554 (Tex.1970); *Rucker v. Rucker*, 810 S.W.2d 793, 795 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Simmons v. Simmons*, 568 S.W.2d 169, 170 (Tex.Civ.App.—Dallas 1978, writ dism'd). In *Simmons*, the

appellant contended that his disability benefits were separate property because they represented a recovery for personal injury and loss of earning capacity *after* divorce. *Simmons*, 568 S.W.2d at 170. The court rejected this argument, holding that the benefits were community property:

> Appellant's contention ignores the fact that the right to receive the disability payments after divorce was a vested property right resulting from his employment ... and as such was part of appellant's remuneration for his employment. Without question the payments made by Delta were community property since the contractual right was part of his compensation during marriage because it was one of the benefits flowing from his employment with Delta.

*Id.*

Appellant seeks to distinguish *Simmons*, arguing that not only did the disability benefits begin after marriage but also that the injury leading to his disability occurred before marriage. We reject this argument, noting that appellant's disabling condition does not result directly from his old injury but from a deterioration occurring through the years. But more importantly there is no distinction because, as in *Simmons*, Newsom's ability to collect disability is "one of the bundle of benefits that flowed from his employment during marriage and had vested prior to his divorce." *Id.*

■ Newsom also contends that his disability benefits are in the nature of worker's compensation benefits, which are not community property when received after divorce. *Bonar v. Bonar*, 614 S.W.2d 472, 473 (Tex. Civ.App.—El Paso 1981, writ ref'd n.r.e.) (holding certain benefits to fall into the category of worker's compensation not divisible as part of community property).

As retirement disability pay, Newsom's benefits are not worker's compensation and are community property. *See Rucker*, 810 S.W.2d at 795. *Rucker* concerned a similar assertion that the benefits involved more resembled worker's compensation than retirement benefits. *Id.* Because the pension statute under consideration contained mandatory retirement language upon the occur-

rence of a disability, the *Rucker* court held that the disputed benefits must be considered as retirement benefits, unlike worker's compensation payments. *Id.*

Appellant would distinguish the holding in *Rucker* by arguing that the Fire Fighter's Relief and Retirement Fund does not contain mandatory language requiring retirement upon disability. *See* Act of May 12, 1989, 71st Leg., R.S., ch. 863, § 5, 1989 Tex.Gen. Laws 3845, 3847, since amended. In fact, both the pension statute and the retirement plan governing his disability pay do mandate retirement upon disability.[3] The Fund administrator testified at the hearing that Newsom was *terminated* when he was declared disabled and that his disability benefits were calculated using his years of service multiplied by *his retirement factor* multiplied by his highest three years' average salary. The Fund administrator also testified that if upon further physical examination Newsom lost his "disabled" classification, he would begin collecting simple retirement benefits (in a lesser amount). Newsom's disability benefits, like the benefits in *Simmons*, are community property, unlike the worker's compensation benefits in *Bonar*. The trial court did not err in finding them community property under the reformed decree of divorce. We overrule the second point of error.

### CONCLUSION

The trial court did not err in finding that Newsom's disability benefits under the Fire Fighter's Relief and Retirement Fund were community property subject to division upon divorce. And the trial court properly found the inadvertent substitution of the word Respondent for Petitioner in the judgment dividing employment benefits to be a clerical error subject to reformation by the entry of a judgment *nunc pro tunc* that awarded one-half of the community property portion of Newsom's disability payments to Petrilli.

We therefore affirm the judgment of the trial court in all regards.

---

3. The language in appellant's retirement plan provides in part:

> If a person serving as an active fire fighter duly enrolled in a fire department covered by this Act becomes disabled for either physical or mental reasons before meeting the requirements to qualify for a service retirement ... the board of trustees *shall*, on his request, or without his request if it shall deem proper and for the good of the department, retire the fire fighter from active service and order that he be paid from the fire fighter's relief and retirement fund of the city a monthly amount.... (emphasis added).