# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00136-CV

**Armando M. Garza, et al., Appellants**

**v.**

**Gray & Becker, P.C., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. GN104188, HONORABLE PAUL DAVIS, JUDGE PRESIDING

Originally, appellants filed a petition in intervention as defendants in district court proceedings involving a court approved settlement agreement regarding contractual attorney=s fees owed to

appellee, Gray & Becker.[1]  In those proceedings, without reaching the merits of any claims related to appellants, the district court severed appellants and all claims between them and Gray & Becker into a separate cause from which this appeal arises.  Following the district court=s rendition below of a final order, appellants contend that the district court (1) did not have jurisdiction over this attorney=s fees dispute; (2) erred in refusing to stay proceedings while appellants pursued an interlocutory appeal; (3) erred in severing appellants and all claims between them and Gray & Becker from the original Travis County district court proceeding; (4) erred in failing to transfer venue; (5) erred in rendering a partial summary judgment; and (6) erred in awarding Gray & Becker additional attorney=s fees.  We will affirm the district court=s judgment.

## Background

---

[1]  Appellants originally intervened in the Travis County district court proceedings cause number GN101682.  Appellants perfected an appeal from the final judgment in that cause, but this Court dismissed their appeal for want of jurisdiction.  *See De la Garza v. Gray & Becker*, 03-02-00135-CV, 2002 Tex. App. LEXIS 5460 (Tex. App.CAustin July 26, 2002, pet. filed) (not designated for publication). Additionally, this Court has addressed two other appeals related to the same attorney=s fees settlement agreement.  *See Garcia v. Gray & Becker*, 03-02-00372-CV, 2002 Tex. App. LEXIS 6883 (Tex. App.CAustin September 26, 2002, no pet.) (not designated for publication); *Cantu v. Gray & Becker*, 03-02-00099-CV, 2002 Tex. App. LEXIS 8212 (Tex. App.CAustin Nov. 21, 2002, no pet. h.) (not designated for publication).

*Related proceedings*

In 1997, members of three unions at the Corpus Christi Army Depot wished to pursue grievances against the United States Army regarding their asbestos exposure claims. The three unions were the exclusive representatives of their members and were authorized under collective bargaining agreements with the Army to pursue grievances on behalf of their members. The unions contracted with Gray & Becker to represent their members= interests in collective bargaining grievance proceedings against the Army. The unions= representatives entered into attorney=s fee agreements with Gray & Becker and agreed to pay Gray & Becker a contingent fee in the amount of 33-1/3% of any recovery. Gray & Becker represented the unions and their members throughout the grievance process and a labor arbitration proceeding. In 2000, the arbitration resulted in the Army paying $82 million to the unions= members. The arbitrator also ordered the Army to pay Gray & Becker attorney=s fees in accordance with the unions= contingent attorney=s fee contracts. The Army appealed the arbitration order to the Federal Labor Relations Authority (AFLRA@). Gray & Becker represented the unions= members during the appeal. The FLRA modified the arbitration order only in regard to the attorney=s fees and directed the Army to request its agency head to permit deductions from each of the employees= awards to pay attorney=s fees in accordance with the contingent fee contracts. The Army=s agency head at the Department of Defense denied the Army=s request, and Gray & Becker was left to its own devices to collect its attorney=s fees.

Gray & Becker then commenced a lawsuit and alleged that the employees who received portions of the arbitration award were obligated to pay contractual attorney=s fees to Gray & Becker in the amount of 33-1/3% of each employee=s gross recovery under the award; alternatively, employees who

executed the Agreement for Compromise & Payment of Contractual Attorney=s Fees (the A27-1/2%@ Agreement) were obligated to pay contractual attorney=s fees of 27-1/2% of the employee=s gross recovery under the award. The law firm of Harris & Greenwell represented a number of employees who filed counterclaims against Gray & Becker asserting that as eligible employees under the arbitration award they were *not* obligated to pay attorney=s fees to Gray & Becker due to Gray & Becker=s improper, unlawful, or tortious acts in negotiating the attorney=s fee contracts. In November 2001, Harris & Greenwell, on behalf of the employee defendants, and Gray & Becker filed with the district court an AAgreement for Class Action Resolution and Settlement (subject to Court approval).@

The agreement stated that the employees= prospects of prevailing on their claims were uncertain, as the court had ruled adversely on similar employees= claims and defenses in another case, and that the employees would be subject to liability and judgment for additional attorney=s fees incurred by Gray & Becker in the prosecution of the enforcement and collection of their claims. The parties agreed that it was in all of their best interests to have one court address and resolve the pending claims instead of having multiple lawsuits in various forums and venues. Gray & Becker, in compromise and settlement of its claims and the employees= claims, agreed to accept 25% of each employee=s gross recovery under the award as full and final settlement of the employees= contractual attorney=s fees obligation to Gray & Becker. Gray & Becker agreed to provide, at its expense, notice (prepared by Harris & Greenwell) to all class members of the class certification, the settlement, and the fairness hearing. Further, Gray & Becker agreed to provide the class members with final notice of the court=s approval of the class settlement. The district court defined and certified two classes of individuals, named class representatives, appointed class counsel for both

**4**

classes, approved the notice to be sent to the class members, and ordered that the notice be mailed to each member of the two classes. Additionally, the district court tentatively approved the terms of the proposed settlement agreement and set the date for a fairness hearing.

All class members were sent a detailed notice by direct mail based on the Army=s address list for current and former employees. Further, a detailed notice was published in a Corpus Christi daily newspaper, and Gray & Becker held two open meetings at the Corpus Christi Army Depot. The district court held the fairness hearing and rendered a final judgment. The judgment contained three lists of individuals: those individuals covered by the judgment; those individuals excluded from Class I as a result of their request to opt out in accordance with the notice of class action; and those individuals who were excluded from Class II as a result of their request to opt out, after receiving the notice of class action. Further, the judgment ordered each class member to pay Gray & Becker 25% of the gross amount of recovery under the arbitration award, and declared that upon such payment, either through direct pay or garnishment, the individual would fully satisfy any claim Gray & Becker might have against the individual. The judgment further ordered each individual to pay 25% of the gross recovery within ten days of receiving the class members= portion of the arbitration award. If not paid within ten days, those non-paying individuals were ordered to pay Gray & Becker 33-1/3% of the employee=s gross portion of the award plus reasonable and necessary attorney=s fees incurred by Gray & Becker in the prosecution and collection of its fees.

Appellants, approximately 380 employees who did not timely opt out of the attorney=s fees settlement agreement, were dissatisfied with their options under the agreement. Despite their failure to opt

out, appellants wanted to be disassociated from the settlement agreement and preferred to assert their own defenses to Gray & Becker=s suit against them for contractual attorney=s fees. Appellants, in their individual capacities, filed a petition in intervention after judgment but during the period the district court retained plenary power. Gray & Becker moved to sever the appellants=intervention into a new cause. The district court, without adjudicating any claims between appellants and Gray & Becker, severed the appellants and all issues between them and Gray & Becker into a new cause of action. This severed proceeding is the underlying cause in this appeal.

*The underlying proceeding*

Following the severance, Gray & Becker filed an amended petition and application for injunctive relief as to appellants and third party garnishees, those being various banks holding portions of appellants=federal arbitration award funds. Gray & Becker moved for partial summary judgment to which the appellants responded. The district court granted Gray & Becker=s motion and ruled that the fee agreements between the unions and Gray & Becker were enforceable against the appellants and that Gray & Becker was entitled to collect from appellants the contractual attorney=s fees in the amount of 33-1/3% of each appellant=s portion of the federal arbitration award. After a trial on the merits, the district court rendered a final judgment ruling that (1) each appellant was liable to Gray & Becker for 33-1/3% of each one=s portion of the federal arbitration award; (2) each appellant was liable to Gray & Becker for damages of $2000, which represented attorney=s fees incurred by Gray & Becker to enforce and collect under the attorney=s fee agreements; (3) in the event of a motion for new trial or an appeal, each appellant was liable to Gray & Becker for $5000, which represented attorney=s fees Gray & Becker would incur in defending the judgment post-trial; (4) Gray & Becker was awarded postjudgment interest; (5) appellants were enjoined from failing or refusing to pay the 33-1/3% of their arbitration award monies into the registry of the court, disposing of or diverting 33-1/3% of their portion of the award, or holding or otherwise receiving their portion of the award without paying the 33-1/3% owed to Gray & Becker as contractual attorney=s fees; and (6) appellants would take nothing on any of their claims against Gray & Becker.

**Discussion**

*Subject matter jurisdiction*

In a late-filed motion, appellants ask this Court to dismiss this appeal and vacate the underlying district court judgment because this Court and the district court lack subject matter jurisdiction over Gray & Becker=s claims for contractual attorney=s fees. Without citing any authority, appellants contend that the Astate district courts are without authority to rule on labor disputes. Labor disputes are absolutely governed by federal law and regulations concerning the administrative system.@ Further, appellants contend that Gray & Becker=s claims for contractual attorney=s fees in the underlying district court action is an Aappeal of the arbitrator=s decisions [that] rests with the FLRA.@

Neither this appeal nor the underlying district court action by Gray & Becker is an appeal of the federal arbitrator=s decision. Additionally, neither the district court cause nor the appellate cause involves a claim by a union member against its union. The claims at issue in both courts are solely Gray & Becker=s claims for its contractual attorney=s fees. We overrule appellants=motion to dismiss for want of subject matter jurisdiction.

## *Severance*

In their first issue, appellants contend that the district court abused its discretion in severing into a new district court cause all issues between appellants and Gray & Becker related to Gray & Becker=s suit to collect attorney=s fees for work it performed for the appellants. Severance of claims rests within the sound discretion of the trial court. *See Liberty Nat=l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (citing *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990)). The trial court abuses its discretion if its decision is arbitrary, unreasonable, and without any

**8**

reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Appellants filed a plea in intervention in the earlier lawsuit because, unlike the other several thousand union member defendants, the appellants did not want to be bound by the settlement agreement related to the contractual attorney=s fees. Rather, the appellants preferred to assert their own defenses against Gray & Becker=s claims for contractual attorney=s fees. The district court=s severance of appellants= claims in no way prevented, but rather enabled, the appellants to challenge Gray & Becker=s claims against them for contractual attorney=s fees on the merits. By granting the severance, the district court allowed appellants to proceed with any defenses to Gray & Becker=s claims while enabling the other union members to settle the attorney fee claims against them.

We hold that appellants have failed to show the district court abused its discretion in severing appellants and all issues between them and Gray & Becker related to the attorney=s fee agreements between the unions and Gray & Becker. Further, appellants have failed to show that the severance order probably caused an improper judgment or prevented appellants from presenting their case to the appellate court. *See* Tex. R. App. P. 44.1(a). We overrule appellants= first issue.

### *Jurisdiction*

In their second issue, appellants contend that the district court was without subject matter jurisdiction over the issues related to Gray & Becker=s claims for attorney=s fees pursuant to its fee agreements with the unions. Appellants contend, without any supporting authority, that Gray & Becker=s

suit in state district court was a collateral attack on a federal district court=s ruling that the FLRA had exclusive jurisdiction over Gray & Becker=s claims for attorney=s fees.

Appellants contend that the United States District Court=s order of dismissal in *Salgado v. Gray & Becker*, a case to which appellants were not parties, held that the FLRA had exclusive jurisdiction over the merits of the attorney=s fees dispute. No. C-01-307, (S.D. Tex. Nov. 28, 2001) (not designated for publication). Appellants have failed, however, to direct this Court to any passage in the *Salgado* opinion that reflects the federal district court ruled that the FLRA had exclusive jurisdiction over the merits of Gray & Becker=s recovery of contractual attorney=s fees.

The *Salgado* court did not address Gray & Becker=s claims for attorney=s fees and did not rule that the FLRA had exclusive jurisdiction of Gray & Becker=s claims against appellants to collect contractual attorney=s fees. The *Salgado* court found that the FLRA had exclusive jurisdiction of employee claims against their *unions*. We note that, regarding Gray & Becker=s claims for attorney=s fees, the *Salgado* court stated, AThis does not mean that [Gray & Becker has] no legally enforceable claim against the individual union members and former members; they may indeed have one, but this Court is not the forum to decide that issue.@ *Id.* Appellants provide no statutory or other legal authority to support their contention that the FLRA has exclusive jurisdiction over Gray & Becker=s claims for contractual attorney=s fees. We overrule appellants= second issue.

*Refusal to stay trial proceedings*

We next turn to appellants= contention that the district court erred by refusing to stay the underlying proceedings while appellants pursued an interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 51.014 (West Supp. 2003). Appellants= brief lacks any record citations to pleadings, motions, district court rulings, or specific notices of appeal filed by appellants that relate to this contention. Further, appellants= brief lacks any supporting case law related to this contention. Such an unsupported, general contention is inadequately prepared for this Court to review. *See State Farm Lloyds v. Williams*, 960 S.W.2d 781, 789 (Tex. App.CDallas 1997, pet. dism=d); Tex. R. App. P. 38.1(h). Because appellants failed to provide any record citations, cite to any relevant facts, or cite to any legal authority supporting this issue, we hold that they have waived this appellate contention. *Id.*; *see also Newsom v. Petrilli*, 919 S.W.2d 481, 484 (Tex. App.CAustin 1996, no writ). In the event their contention is not waived, we hold that appellants have failed to show that the district court=s failure to stay proceedings to allow appellants to pursue an interlocutory appeal probably caused the rendition of an improper judgment or affected their ability to present their claims to the appellate court. *See* Tex. R. App. P. 44.1(a). We overrule appellants= third issue.

*Venue*

Regarding venue, appellants contend first that the district court erred by failing to hear their motion to transfer venue in a timely manner. Second, appellants contend that the district court erred in denying their motion to transfer venue of this cause because (1) venue was proper in Nueces County; (2) none of appellants signed the fee contracts; and (3) Nueces County is the county where all or a substantial

**11**

part of the events related to the claims occurred. Appellants again fail to cite any legal authority to support their contentions. Failure to cite legal authority to support an appellate issue constitutes a waiver of the issue. *See Newsom*, 919 S.W.2d at 484.

In any event, reviewing the record, paragraph nine of Gray & Becker=s first amended petition asserted the following:

9.     Gray & Becker and the Unions entered into the fee agreements which are the subject and basis of this suit in Austin, Travis County, Texas and as a result of Gonzales, Livengood, and Quintanilla soliciting Gray & Becker in Austin to represent their unions and to enter into the fee agreements. The fee agreements did not become operative and effective unless and until Gray & Becker signed the fee agreements; Gray & Becker signed the fee agreements in Austin, Travis County, Texas. In addition, most of the work (at least 90%) which Gray & Becker has performed in performance of the fee agreements and in performance with the attorney/client relationships which are the subject and basis of this suit has been and continues to be performed in Austin, Travis County, Texas. In addition, [appellants=] performance under the fee agreements (to wit: payment of contractual attorney=s fees to Gray & Becker) was to have been performed in Travis County, Texas. This Court has previously denied [appellants=] Motion to Transfer Venue and ruled that venue of [Gray & Becker=s] claims is proper in Travis County, Texas. In addition, [appellants] have waived [appellants=] objections to venue by affirmatively intervening in this suit. In addition, [appellants] have waived [appellants=] objections to venue by filing [appellants=] answers in this suit prior to, and not subject to, [appellants=] Motion to Transfer Venue.

Venue selection presupposes that the parties to the lawsuit have choices and preferences about where their case will be tried. *See* Tex. Civ. Prac. & Rem. Code Ann. '' 15.001-.040 (West 2002); *Wilson v. Texas Parks & Wildlife Dep=t*, 886 S.W.2d 259, 260 (Tex. 1994) (citing *Maranatha Temple, Inc. v. Enterprise Prod. Co.*, 833 S.W.2d 736, 741 (Tex. App.**C**Houston [1st Dist.] 1992, writ

**12**

denied)). Venue may be proper in more than one county under general, mandatory, or permissive venue rules. *Wilson*, 886 S.W.2d at 260. The plaintiff is given the first choice of venue selection in the filing of the lawsuit. *Id.* If the plaintiff=s choice is not properly challenged through a motion to transfer venue, the propriety of venue is fixed in the county chosen by the plaintiff. Tex. Civ. Prac. & Rem. Code Ann. ' 15.063 (West 2002); Tex. R. Civ. P. 86. The question of proper venue is raised only if a defendant objects to the plaintiff=s venue choice and properly challenges that choice. Tex. R. Civ. P. 86. If a plaintiff chooses a county of proper venue, and the choice is supported by proof as required by Rule 87, no other county can be a proper venue in that case. *Wilson*, 886 S.W.2d at 261; Tex. R. Civ. P. 87. This rule gives effect to the plaintiff=s right to select a venue. *Wilson*, 886 S.W.2d at 261.

In applying these rules, two bases exist for challenging venue: either (1) the county where the proceedings are pending is not a proper county as no permissive venue exists, or (2) mandatory venue lies in another county. *See* Tex. R. Civ. P. 86(3)(a), (b). Appellants= motion to transfer venue did not allege either ground.

All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party. *See Geochem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 543 (Tex. 1998); Tex. R. Civ. P. 87. At no time during the proceedings have the appellants specifically denied or otherwise controverted the venue facts alleged by Gray & Becker in its amended petition. Further, at no point during the proceedings have appellants urged that venue is mandatory in Nueces County. Appellants urge only that venue would be proper in Nueces County. The district court correctly took as true the venue facts alleged by Gray & Becker, which were supported by the verified affidavit of Brian Bishop, the attorney in charge

**13**

for Gray & Becker in these proceedings, and determined that venue was proper in Travis County because all or a substantial part of the events giving rise to the claim occurred in Travis County. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 15.002(a)(1) (West 2002).

We hold that in the event appellants did not waive their complaints regarding venue, error, if any, did not cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). We overrule appellants= fourth issue.

### *Summary Judgment*

Appellants also contend that the district court erroneously granted a partial summary judgment in favor of Gray & Becker. Gray & Becker moved for a partial summary judgment seeking to establish as a matter of law: (1) that the attorney=s fee agreements entered into between Gray & Becker and the unions, the exclusive representatives of their members, were enforceable; and (2) that the appellants, union members who received portions of the federal arbitration award, were obligated to pay Gray & Becker 33-1/3% of their portions of the award in accordance with the fee agreements. Gray & Becker asserted several theories in support of its motion including the written contract, *quantum meruit*, *res judicata*, collateral estoppel, quasi-estoppel, and the common fund doctrine. Because the order granting summary judgment did not specify the theory upon which the district court relied, we will affirm the order if any one of the several theories advanced are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

The summary judgment evidence established that the federal arbitrator and the FLRA in the underlying arbitration proceeding ruled that appellants were obligated to pay 33-1/3% of their portion of the arbitration award to Gray & Becker as contractual attorney=s fees. Additionally, the evidence established that the fee agreements upon which Gray & Becker relied were entered into and executed by the unions= representatives, who are statutorily designated as the exclusive representatives of appellants. *See* 5 U.S.C.A. ' 7114 (West 1996). Only through the unions could appellants pursue their asbestos-related grievance claims; that is, appellants lacked any legal standing or authority to pursue these grievances individually or through individual attorneys. Gray & Becker fully performed and continues to perform its services in reliance upon the fee agreements. In 2001, after litigation commenced, all three unions reaffirmed and ratified the fee agreements. As a result of Gray & Becker=s efforts, appellants have received their arbitration awards. Gray & Becker=s representation of appellants and the fee agreements were matters that were widely publicized to Corpus Christi Army Depot employees. It is undisputed that appellants did not communicate any objections or challenge Gray & Becker=s authority, the Unions= actions or authority, or the fee agreements until *after* Gray & Becker had fully performed under the agreements, the award monies were being distributed, and appellants had accepted the results of Gray & Becker=s services. The summary judgment evidence included the arbitrator=s September 14, 2001 AOrder Concerning Remedy,@ which provided:

> 33-1/3% contractual attorney=s fees I have previously ordered that the employees owe to
> and shall be paid to Gray & Becker are expenses of litigation incident to administering the
> contract and to settling grievances and disputes. The 33-1/3% contractual attorney=s fees

**15**

are, therefore, clearly chargeable to the employees as a normal incident of the Unions= exclusive representation.

Absent a prior successful direct challenge to the arbitrator=s decision and orders, appellants cannot accept one portion of the arbitrator=s orderCthe award of monies to the unions=membersCand yet ignore or disavow another portion of the same arbitrator=s order. Thus, appellants cannot now disavow the portion of the arbitrator=s decision requiring appellants to pay Gray & Becker attorney=s fees in accordance with the fee agreements. *See Newman v. Link*, 889 S.W.2d 288, 289 (Tex. 1994) (citing *Carle v. Carle*, 234 S.W.2d 1002, 1004 (Tex. 1950)).

Further, Gray & Becker=s right to collect its contractual attorney=s fees from the individual appellants is established as a matter of law based on the doctrine of quasi-estoppel. The principles of quasi-estoppel preclude a party from asserting, to another=s disadvantage, a right inconsistent with a position previously taken. *See Enochs v. Brown*, 872 S.W.2d 312, 317 (Tex. App.CAustin 1994, no writ). Quasi-estoppel applies when it would be unconscionable to allow individuals to maintain a position inconsistent with one in which those individuals have accepted a benefit. *Id.*

In *Enochs*, this Court rejected the argument that a contractual attorney=s fee agreement not signed by the client is always unenforceable. In *Enochs*, the minor client=s parent was estopped from claiming that the attorney with whom the child=s sole managing conservator had executed a contingent attorney=s fee agreement was not entitled

**16**

to the contingent fee pursuant to the agreement because the attorney had performed and the child had accepted, used, and enjoyed the attorney=s services and the product of those services. *Id.* (Texas Family Code delegates to sole managing conservator exclusive right to represent child in litigation and fee contract signed by minor client=s legal representative was valid).

Federal law delegates to the unions the exclusive right to represent union members in federal arbitration. *See* 5 U.S.C.A. ' 7114. At this late date, it would be unconscionable to allow appellants, the beneficiaries of the federal arbitration award negotiated by Gray & Becker, to challenge the fee agreements *only after* they have accepted the benefits of those agreements between their union representatives and the law firm that secured their award. We conclude that, as a matter of law, the fee agreements were enforceable and the appellants were obligated to pay Gray & Becker contractual attorney=s fees in the sum of 33-1/3% of their portions of the arbitration award. We overrule appellants= issue contending that the district court erred in granting a partial summary judgment.

### *Evidentiary challenges to attorney=s fees*

Appellants also raise contentions that directly attack the evidentiary support for the award of 33-1/3% as the *amount* of contractual attorney=s fees awarded, as well as the additional award to Gray & Becker of attorney=s fees in the amount of $2000 per

appellant to prosecute the underlying enforcement and collection proceeding through trial and the award of $5000 per appellant in the event appellants pursue a new trial or appeal.

Appellants first contend that Gray & Becker failed to prove that the specified sum of 33-1/3% of each appellant=s portion of the arbitration award was a reasonable fee. During the trial on the merits, Gray & Becker presented evidence regarding its fees for pursuing the appellants= asbestos claims. Brian Bishop, the Gray & Becker attorney primarily responsible for representing the union members since he commenced the federal grievance proceedings, testified about Gray & Becker=s history and involvement in the union members= federal grievance process, in the federal arbitration, and in the many lawsuits that followed both in federal and state court. Bishop testified about his background in the legal profession and about his hourly rate. Appellants= cross-examination focused only on the validity of the fee agreements, an issue that the district court previously determined by summary judgment. At trial, appellants never questioned the amount of attorney=s fees sought by Gray & Becker and ultimately awarded in this case.

Gray & Becker=s evidence related to the amount of contractual attorney=s fees was sufficient to support the factors discussed in depth in *Arthur Anderson & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). No contrary evidence was presented. We hold that the district court did not err in awarding attorney=s fees in accordance with Gray & Becker=s evidence. We overrule appellants= contention that the

**18**

amount of the contractual attorney=s fees, 33-1/3% of each appellant=s share of the arbitration award, was unsupported by the evidence.

Appellants also contend that there was no evidence or insufficient evidence to support the district court=s award to Gray & Becker of attorney=s fees in the amount of $2000 per appellant to prosecute the underlying action and $5000 per appellant in the event appellants seek a post-trial review.

Gray & Becker presented evidence that the amount of the attorney=s fees was greatly affected by the vexatious actions of appellants and appellants= counsel throughout the underlying proceeding. Bishop testified that appellants had filed (1) a petition in intervention in an earlier proceeding where, but for their intervention, they would have been considered participants in a settlement regarding the contractual attorney=s fees at issue; (2) a multitude of various types of motions; and (3) petitions for writ of mandamus in the Third Court of Appeals as well as the Texas Supreme Court. Bishop also testified that the amount of attorney=s fees related to this collection proceeding was greatly affected by problems during discovery caused by appellants and their counsel when they failed to appear for depositions, refused to produce documents, and failed to abide by court orders. Bishop testified that based on his experience and his familiarity with all of the related federal and state proceedings, A$2000 per [appellant] in this case is an amount which is reasonable and which has been necessary to prosecute this case to final judgment.@ Bishop also testified that in the event Gray & Becker prevailed on its claims and appellants

**19**

prosecuted a motion for new trial or an appeal, an additional $5000 per appellant is a reasonable amount necessary to defend Gray & Becker=s judgment. There was no testimony or evidence presented to the contrary. Further, at trial, appellants never objected or challenged Gray & Becker=s evidence related to attorney=s fees.

We hold legally and factually sufficient evidence supports the district court=s award of attorney=s fees in the sum of $2000 per appellant to prosecute this case through trial and the award of $5000 per appellant in the event appellants seek a new trial or an appeal. We overrule appellants= seventh contention.

## Conclusion

Having addressed all of appellants= contentions, we affirm the district court=s judgment.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: December 12, 2002

Do Not Publish